IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § | |
| v. | § § § § § | CASE NO. 1:24-CR-00109-2-MAC |
| DARRELL JOSHUA BENDY | | |

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE
JUDGE ON THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Pending before the undersigned are two Motions to Suppress filed *pro se* by the Defendant, Darrell Bendy ("Bendy") and two Second Amended Motions to Suppress. (Docs. #311, #313, #353, #363).[1]  The Government filed responses to the Defendant's motions (docs. #339, #375), and the undersigned magistrate judge heard oral argument on October 1, 2025, and additional evidence and argument on October 31, 2025.  The undersigned finds that the Defendant lacks standing to contest the search on August 14, 2023, and the search and seizure on April 20, 2024 was lawful.  Accordingly, the undersigned recommends denying Bendy's motions.

I. RELEVANT FACTS

Bendy is charged in two counts of the Indictment—Counts 1 and 8.  Count One alleges a violation of 21 U.S.C. § 846, Conspiracy to Possess with the Intent to Distribute 50 grams or more of "Actual" Methamphetamine, and Count Eight alleges a violation of 21 U.S.C. § 841(a)(l), Possession with Intent to Distribute 50 grams or more of "Actual" Methamphetamine. (Doc. #1.)

---

[1] This motion is referred to the undersigned United States magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.  *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B) and E.D. TEX. LOCAL R. CR-59(a).

1

Bendy argues that the evidence seized during two traffic stops should be suppressed because the searches were in violation of his rights under the Fourth Amendment of the United States Constitution. Specifically, he challenges: 1) the traffic stop on August 14, 2023, involving his girlfriend, Shelby Andrews, who was driving her own vehicle and consented to the search; and 2) the traffic stop on April 20, 2024, involving Jonathan Austin ("Austin"), who was driving a vehicle co-owned by Bendy. Shelby Andrews and Jonathan Austin are both co-conspirators in this case.

In response, the Government argues that Bendy lacks legal standing to assert the unconstitutionality of the search on August 14, 2023, because he did not own the vehicle, was not in the vehicle for the traffic stop, nor was he present at the scene, and he did not have a reasonable expectation of privacy in the vehicle. Further, the Government alleges that the traffic stop on April 20, 2024, and the resulting search and seizure was executed lawfully.

## II. RELEVANT LAW AND DISCUSSION

### A. Standing

The Fourth Amendment protects individuals from unreasonable searches and seizures. Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated." *United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014). In doing so, a defendant must show that he has a reasonable expectation of privacy implicating the Fourth Amendment. *United States v. Landry,* 729 F. App'x 345 (5th Cir. 2018). This is known as Fourth Amendment standing, which should not be confused with Article III standing. *United States v. Rodriguez*, 33 F.4th 807, 811 (5th Cir. 2022). Fourth Amendment rights may not be vicariously asserted. *United States v. Escamilla*, 852 F.3d 474, 485

(5th Cir. 2017). In addition to a subjective expectation of privacy, a Defendant must also show that the expectation of privacy is objectively "one which society would recognize as reasonable." *Iraheta*, 764 F.3d at 461.

In *United States v. Haydel,* 649 F.2d 1152, 1155 (5th Cir. 1981), the Fifth Circuit held that in addition to property ownership[1], there are other factors the court may consider in making a determination of whether a defendant has an expectation of privacy, including: "whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." *Haydel,* 649 F.2d at 1155.

In *Winters,* the evidence sought to be suppressed was secured by the search of a third person's vehicle. *United States v. Winters*, No. CRIM. 09-0064, 2009 WL 4664128, at *2–3 (W.D. La. Dec. 4, 2009). The car belonged to the defendant's sister, she had been driving it, he had not driven it that day, she had left the car and the area on foot, and the officers ran the license plate of the vehicle indicating it was registered to his sister. *Id.* Therefore, the court found the defendant had no Fourth Amendment rights infringed by the officers' search of his sister's car, and he had no standing to raise a Fourth Amendment challenge. *Id.*

Similarly, in *Arce*, the Fifth Circuit held that a defendant had no standing to contest the search of a vehicle since he had no legitimate expectation of privacy in the vehicle, which was

---

[1] "Standing does not require an ownership interest in the invaded area." *United States v. Allmon*, No. 521CR121RWSJBB, 2023 WL 3743872, at *10 (E.D. Tex. May 15, 2023), *R. & R. adopted*, 2023 WL 3739074 (E.D. Tex. May 31, 2023).

3

registered to someone else and he was not a passenger in it when arrested. *United States v. Arce*, 633 F.2d 689, 694 (5th Cir. 1980).

In this case, for the consent search of the vehicle driven by Shelby Andrews on August 14, 2025, Bendy had no expectation of privacy in that vehicle. The vehicle is registered to Shelby Andrews as shown on the registration paper supplied by the government as an exhibit at the hearing. Further, Bendy was not a passenger in the vehicle and he was not present at the time of the search of the vehicle. There is also no allegation that he owned any items in the vehicle that were searched. Consequently, the undersigned finds that Bendy has no standing to raise a Fourth Amendment challenge as to the search and seizure of items from the gold Ford Fusion driven by Shelby Andrews on August 14, 2023.

With regard to standing to challenge the traffic stop of the black Camero driven by Jonathan Austin on April 20, 2024, the question is more difficult. The Government concedes that Bendy is a co-owner of that vehicle and had given Austin permission to drive the car. However, Bendy was not a passenger and was not present at the time of this vehicle's search and seizure either.

In *Lee*, the Fifth Circuit looked at the *Haydel* factors and found that all but one favored a finding that the defendant had standing to contest the search of a truck's cargo hold even though he was not a passenger or present at the search but had rented the truck in his name. *United States v. Kye Soo Lee*, 898 F.2d 1034, 1038 (5th Cir. 1990). In addition to renting the truck, the defendant had also placed a padlock on the truck's cargo hold door. *Id.* The court found that he had, in the truck's cargo hold, a right to exclude others and an expectation of privacy from governmental intrusion that he took normal precautions to maintain. *Id.* Consequently, the court found that he had standing to contest the search of the truck's cargo hold. *Id.*

Here, Bendy was a co-owner of the vehicle giving him more of an expectation of privacy than a renter of a vehicle, but it is questionable whether he took precautions to protect his privacy interest by locking up his personal items in the vehicle after giving permission to Austin to drive the vehicle. The officer found the illegal narcotics behind the seat of the Camero. Nevertheless, even assuming Bendy has standing, his motion to suppress the evidence can be denied on a different ground. Specifically, the officer had both consent and probable cause to search the automobile. *See United States v. McMillon*, 657 F. App'x 326, 332 (5th Cir. 2016).

**B. Search of the Black Camero on April 20, 2024**

Because traffic stops are considered more akin to investigative detentions than formal arrests, the legality of traffic stops for Fourth Amendment purposes is analyzed under the standard articulated in *Terry v. Ohio,* 392 U.S. 1 (1968). *Terry* requires that courts apply a two-step "reasonable suspicion" inquiry to: 1) determine whether the officer's action was justified at its inception, and 2) determine whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place. *United States v. Zamora*, 661 F.3d 200, 204 (5th Cir. 2011). Where there is no warrant, the government bears the burden of establishing by a preponderance of the evidence that the challenged search and/or seizure was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). A warrantless search of an automobile is valid under the Fourth Amendment when a police officer has probable cause. *Almeida-Sanchez v. United States*, 413 U.S. 266, 269 (1973).

Under the automobile exception, officers may search a car where "probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Probable cause to search such a vehicle exists where "'trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle

5

contains contraband.'" *United States v. Flores-Manjarez*, 421 F. App'x 407, 410 (5th Cir. 2011) (quoting *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010)). The probable cause determination is based on the totality of the circumstances. *Id.*

Furthermore, police may rely on the voluntary consent of a person holding common authority over the place to be searched. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). The voluntariness of a consent to search is a question of fact determined by examining the totality of the circumstances, including the following six factors: (1) the voluntariness of the custodial status; (2) the presence of coercive police procedures; (3) the extent and level of cooperation with the police; (4) awareness of the person's right to refuse consent; (5) the person's education and intelligence; and (6) the person's belief that no incriminating evidence will be found. *United States v. Gonzalez-Basulto*, 898 F.2d 1011, 1012-13 (5th Cir. 1990).

Here, the government asserted in their response and presented evidence at the hearing that the black Camero was involved in an active drug trafficking event based on prior law enforcement investigations. Interceptions of wireless communications between Bendy and other conspirators revealed that there was an upcoming drug distribution event and surveillance operations indicated that Jonathan Austin would be traveling from Houston to Beaumont to supply another conspirator with methamphetamine from Bendy. DPS Trooper Ricardo Cibrian was aware of this investigation and was asked to locate the black Camero. Once he did, he pulled over Austin for a defective left side tail lamp, which is a violation of the Texas Transportation Code. He then determined upon contact with Austin that he did not have a driver's license and there were multiple children in the car without the proper booster seats. Trooper Cibrian observed Austin to be shaky, nervous, and sweating. Based upon the above evidence, the undersigned finds probable cause existed to search the vehicle. *United States v. Webster*, 750 F.2d 307, 323 (5th Cir. 1984)

("[P]robable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest, when there is some degree of communication between the two."). Nonetheless, Trooper Cibrian asked Austin for consent to search the vehicle, and Austin authorized the search. At no time during the search did Austin withdraw his consent to search.

Trooper Cibrian did not brandish any weapons or threaten Austin in any way. Austin remained present at the scene because he did not have a license to drive, and the children did not have booster seats and were awaiting a ride. He sat in the Trooper's vehicle with the children. Austin was not placed under arrest until after the search uncovered the methamphetamine. While the Trooper admitted that he did not inform Austin of his right to refuse to consent, there is no evidence from the video of the stop and interaction that he put any kind of pressure on Austin to get his consent. He merely asked for permission. Austin exhibited a sufficient degree of understanding to indicate his response was intelligent. Austin may well have believed that no drugs would be found because the methamphetamine was hidden behind the seat where the children were sitting. The court finds sufficient evidence indicating Austin's consent was voluntary.

After Trooper Cibrian's initial search, he noticed stripped screws on the paneling of the car and a large speaker box in the trunk, both of which may indicate attempts to conceal illegal narcotics. Therefore, he requested a K-9 officer for assistance. During the initial search, the Trooper left the passenger door and trunk open. Upon arrival, the K-9 approached the open passenger door, sniffed inside the Camero and alerted to narcotics. The Trooper and the second officer that arrived with the K-9 then searched behind the seat and found the methamphetamine.

Typically, a free-air sniff of the exterior of a car by narcotics-detection dogs is so minimally invasive that it does not constitute a "search" or a "seizure" for Fourth Amendment purposes. *United States v. Place*, 462 U.S. 696, 707 (1983). The Fifth Circuit has held that a canine sniff "is exempt from the probable cause requirement so long as the dog does not enter the home or vehicle." *United States v. Powell*, 732 F.3d 361, 373 (5th Cir. 2013). Because the dog in this case entered the vehicle, it is considered a search and the court must determine if that search exceeded Austin's scope of consent or if there was separate probable cause justifying that search.

Once probable cause justifies the search of a vehicle, it "justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999); *United States v. Zucco*, 71 F.3d 188, 191-92 (5th Cir. 1995) ("If supported by probable cause, every part of a vehicle which may conceal the object of the search may be searched."). This includes containers within the vehicle as long as officers "have probable cause to believe evidence or contraband is contained" inside. *California v. Acevedo*, 500 U.S. 565, 580 (1991). As discussed above, the totality of the circumstances indicate there was probable cause to search the black Camero, including the prior investigation, Austin's behavior, and the evidence of the stripped screws and trunk modification. Moreover, the video of the traffic stop and search of the vehicle indicate that the Trooper told Austin that he called for a K-9 and asked him to keep the children away from the dog. Austin also saw the K-9 arrive to search the vehicle with the door and trunk still open. At no time did Austin speak up to limit or withdraw his consent to search the vehicle. *See United States v. Woods*, 445 F. Supp. 2d 1328, 1332–33 (M.D. Ala. 2006) (finding consent included the canine search of the interior of car where defendant was aware of dog's presence and purpose before the search and he did not limit the area the officers could search or ask that the search be discontinued).

Once the K-9 made a positive alert to narcotics in the vehicle, there was further probable cause to search inside the seat of the vehicle. *Florida v. Harris*, 568 U.S. 237, 248 (2013). "An automobile search may include some injury to the vehicle or the items within the vehicle, if the damage is reasonably necessary to gain access to a specific location where the officers have probable cause to believe that the object of their search is located." *United States v. Hernandez*, No. 17-CR-00067, 2017 WL 4172629, at *5 (W.D. La. Aug. 4, 2017), *R. & R. adopted*, 2017 WL 4171390 (W.D. La. Sept. 20, 2017), *aff'd*, 744 Fed. App'x 873 (5th Cir. 2018) (citing *United States v. Ross*, 456 U.S. 798, 817-819 (1982)); *see also Carroll v. United States*, 267 U.S. 132, 136 (1925) (search of vehicle included tearing open upholstery); *see also Maryland v. Garrison*, 480 U.S. 79, 84–85 (1987) (scope of lawful search is defined by object of search and places in which there is probable cause to believe that object will be found). The search revealed one kilogram of actual methamphetamine. The undersigned finds this search and seizure was lawful.

### C. Miscellaneous Arguments

Bendy made some miscellaneous arguments in his motion and at the suppression hearing regarding the length of the traffic stop, and the jurisdiction of the officer who assisted in the K-9 search. He did not, however, present any evidence regarding these issues. In any event, the videotape of the stop, which was introduced as an exhibit, shows that in its entirety it lasted approximately thirty-five minutes. Further, Austin was unable to leave in the car because he did not have a license and the children were unable to leave without booster seats. Therefore, the length of the traffic stop was not delayed by the search of the vehicle. Further, the evidence indicates that Sergeant Heilman (the K-9 officer) is a deputy with the Jefferson County Sheriff's office and the stop occurred within Jefferson County, Texas. Therefore, Bendy's motion should be denied on these issues as well.

### III. **RECOMMENDATION**

The undersigned finds that Bendy lacks standing to assert a Fourth Amendment challenge to the search of Shelby Andrews' vehicle on August 14, 2023. Further, the undersigned finds that there was consent and probable cause to search the vehicle driven by Jonathan Austin on April 20, 2024, as discussed above. Consequently, it is recommended that the district court deny the Defendant's Motions to Suppress and Amended Motions to Suppress. (Docs. #311, #313, #353, #363.)

### IV. **OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2); E.D. Tex. Local R. CR-59(c). A party who objects to this Report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3).

**Due to the trial setting in this case on November 12, 2025, the undersigned is shortening the objection period. A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, by November 7, 2025**, bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact

and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

Stand-by counsel for the Defendant was emailed an electronic copy of this Report and Recommendation with instructions to deliver a copy of same to the Defendant before his deadline to file objections to this Report and Recommendation.

**SIGNED this the 4th day of November, 2025.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE