**UNITED STATES DISTRICT COURT**   **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:24-CR-109(2) |
| | § | |
| DARRELL JOSHUA BENDY | § | |

**MEMORANDUM AND ORDER**

Pending before the court is the Government's Motion in Limine (#356). Defendant Darrell Joshua Bendy ("Bendy") did not file a response in opposition to the Government's Motion in Limine.[1] Having considered the pending motion, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motion should be granted in part and denied in part as follows.

I.    Background

On November 6, 2024, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a thirteen-count Indictment against Bendy and thirteen co-defendants. The Indictment charged Bendy in Count One with Conspiracy to Possess with the Intent to Distribute 50 Grams or More of "Actual" Methamphetamine, in violation of 21 U.S.C. § 846, and in Count Eight with Possession with Intent to Distribute 50 Grams or More of "Actual" Methamphetamine, in violation of 21 U.S.C. § 841. The case is set for jury selection and trial on Wednesday, November 12, 2025.

---

[1] Responses to pretrial motions were due October 30, 2025 (#299).

II.   Analysis

A.   Motions in Limine

The court has inherent authority to manage the course of trials and thus rule on motions in limine. *See United States v. Logwood*, No. 3:24-CR-00017, 2025 WL 1908976, at *1 (W.D. La. July 10, 2025) (citing *Coates v. TNT Crane & Rigging, Inc.*, No. MO:22-CV-00018-DC, 2023 WL 11915701, at *1 (W.D. Tex. 2023)). A motion in limine "is not a definitive ruling on the admissibility of evidence." *7X Cattle Co., L.L.C. v. Brandstadt*, No. 6:22-cv-396-JDK, 2025 WL 2269797, at *1 (E.D. Tex. July 15, 2025); *Green Acres Baptist Church, Inc. v. Brotherhood Mut. Ins. Co.*, No. 6:23-cv-566-JDK, 2025 WL 747818, at *1 (E.D. Tex. Jan. 17, 2025); *Ogden v. Cozumel, Inc.*, No. A-18-CV-00358-DAE-SH, 2019 WL 5295495, at *1 (W.D. Tex. Oct. 18, 2019) (stating that "[a]ll rulings on motions in limine are preliminary evidentiary rulings [and are] not final" (citing *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 3877291, at *1 (E.D. Tex. June 27, 2016))). Rather, an order granting a motion in limine is an order requiring the proponent of the evidence to approach the bench and seek leave of court prior to offering the disputed evidence at trial. *7X Cattle Co., L.L.C.*, 2025 WL 2269797, at *1; *Green Acres Baptist Church, Inc.*, 2025 WL 747818, at *1; *see King v. King*, 117 F.4th 301, 306 (5th Cir. 2024); *Rojas v. Richardson*, 703 F.2d 186, 188 (5th Cir. 1983).

The United States Court of Appeals for the Fifth Circuit has observed that "[m]otions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980); *see Rojas*, 703 F.2d at 189; *Smith v. China Mfrs. All. L.L.C.*, No. 2:19-CV-01111, 2025 WL 1839905, at *2 (W.D. La. July 3, 2025). Nonetheless, they are well-established devices that

2

streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues. *United States v. Spotted Horse*, 916 F.3d 686, 693 (8th Cir. 2019); *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Motion in limine rulings "are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 764 n.3 (2000); *accord Luce v. United States*, 469 U.S. 38, 41 (1984) (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner); *United States v. Thornhill*, 940 F.3d 1114, 1121 (9th Cir. 2019); *see Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 418 (5th Cir. 2020).

Motions in limine may also be used to secure a pretrial ruling that certain evidence is admissible. *United States v. Barefoot*, No. 3:22-CR-13-DPJ-LGI, 2023 WL 6319893, at *1 (S.D. Miss. Sept. 28, 2023) ("It is well-established that motions in limine may be used to secure a pretrial ruling that certain evidence is admissible." (quoting *Bond Pharmacy, Inc. v. AnazaoHealth Corp.*, No. 3:11-CV-58, 2012 WL 3052902, at *2 (S.D. Miss. July 25, 2012))); *see United States v. Zelaya*, No. 22-77, 2024 WL 4719502, at *2 (E.D. La. Nov. 8, 2024); *United States v. Kirk*, No. SA11-CR-449(2), 2013 WL 6198221, at *1 (W.D. Tex. Nov. 27, 2013) ("[T]he Government's Motion for Early Admissibility Rulings asked the Court to rule on the admissibility of certain evidence prior to trial and as such, it was, for all intents and purposes, a motion in limine.").

B.    Government's Motion in Limine

The Government's Motion in Limine contains nine requests. Bendy has not voiced any opposition to the Government's requests.

3

1.      General Requests

The Government's following requests are granted as unopposed. Bendy is prohibited from discussing, arguing, or offering any evidence about the matters set forth below without being granted leave of court outside the jury's presence:

1.      Evidence and argument about pre-trial motions.

2.      Evidence and argument about plea offers and plea negotiations.

3.      Evidence and argument about punishment.

4.      Evidence and argument about jury nullification.

5.      Evidence or argument about specific instances of Bendy's lawfulness or good conduct, including that Bendy is a business owner, a family man, or involved with charities in Africa. If evidence of Bendy's character for lawfulness is presented on direct examination, the evidence must be limited to reputation or opinion testimony with no specific instances of conduct mentioned. In addition, if Bendy calls a character witness to testify about his general reputation, the Government may cross-examine the witness regarding specific instances of conduct that are inconsistent with the proffered trait, ask the witness about facts of the instant case, use evidence of bias to impeach the witness, and call its own character witnesses to offer evidence contrary to Bendy's character evidence.

6.      Bendy's improper hearsay statements, including any exculpatory statements he made to law enforcement or other participants, even if the Government introduces inculpatory statements made by Bendy.

7.      Reference to uncalled witnesses or evidence not presented.

2.      Prior Bad Acts of Government Witnesses

In its Motion in Limine (#356), the Government also seeks to preclude any mention of, or attempt to impeach, any Government witness with allegations of bad acts, charges, arrests, adjudications, prison disciplinary infractions, or convictions, other than felony convictions or conviction for offense involving dishonesty or false statement for which the witness has been released from confinement within the last ten years. In this motion however, the Government does

4

not identify any specific witness or any prior bad act that it wishes to preclude.  In the absence of particularity as to the nature or circumstances of any such evidence, the court cannot make an informed ruling in a vacuum.  *See Skelton v. Exam'r Corp.*, No. 1:18-CV-203, 2019 WL 13217114, at *4 (E.D. Tex. Oct. 29, 2019) (collecting cases); *see also United States v. Brown-Manning*, No. 3:23-CR-00213, 2025 WL 242205, at *1 (W.D. La. Jan. 17, 2025) (holding that a motion "set[ting] forth a [] laundry list of matters, most of them of a highly vague nature . . . constitutes an improper 'shotgun' motion which fails to meet this court's standards for motions in limine." (quoting *Estate of Wilson v. Mariner Health Care, Inc.*, No. 2:07-CV-55, 2008 WL 5255819, at *1 (N.D. Miss. Dec. 16, 2008))).  The court is mindful of the Federal Rules of Evidence and will enforce them as appropriate at trial.  The court, therefore, denies the Government's request subject to the Government identifying the specific prior bad acts it wishes to exclude.[2]

3.    Bendy's Prior Convictions

Finally, in its Motion in Limine, the Government seeks to introduce "certain evidence under Rule 404(b)," identified in its Notice of Intention to Offer 404(b) Evidence (#355).  The Government's 404(b) Notice (#355) and Brief in Support of Motion in Limine (#354) identify five of Bendy's prior convictions:

1.    On March 28, 2018, Bendy was convicted of the offense of Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. § 922(g), in Cause Number 1:17-CR-98(1), in the United States District Court for the Eastern District of Texas, and was sentenced to 63 months' imprisonment.

---

[2] In additional to its general request to exclude bad acts of its witnesses contained in this motion, the Government also filed a Sealed Motion in Limine to Exclude Improper Impeachment Evidence at Trial and Request a Protective Order (#357), to which Bendy filed a response in opposition (#382).  The court will enter an order on that motion separately.

His sentence was followed by a three-year term of supervised release. Bendy was under supervision for this offense when the offenses charged within the Indictment are alleged to have occurred.

2.    On October 27, 2014, Bendy was convicted of the offense of Possession of a Controlled Substance in Cause Number 14-19853, in the 252nd District Court, Jefferson County, Beaumont, Texas, and was sentenced to 5 years' imprisonment.[3]

3.    On October 27, 2014, Bendy was convicted of the offense of Delivery of a Controlled Substance in Cause Number 14-18910, in the 252nd District Court, Jefferson County, Beaumont, Texas, and was sentenced to 12 months' imprisonment.

4.    On October 27, 2014, Bendy was convicted of the offense of Possession of a Controlled Substance in Cause Number 14-19292, in the 252nd District Court, Jefferson County, Beaumont, Texas, and was sentenced to 5 years' imprisonment.[4]

5.    On October 27, 2014, Bendy was convicted of the offense of Possession of a Controlled Substance in Cause Number 14-18865 in the 252nd District Court, Jefferson County, Beaumont, Texas, and was sentenced to 5 years' imprisonment.[5]

Generally, extrinsic evidence of other crimes, wrongs, or other acts is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Nevertheless, "[t]his evidence may be

---

[3] The Government's description of this conviction also cites to cause numbers 302732 and 302762. However, the court's records indicate that cause numbers 302732-1 and 302762-1 are associated with charges that were ultimately dismissed by the Jefferson County Court at Law No. 2 on November 13, 2014.

[4] The Government's description of this conviction includes cause numbers 19290 and 302196. The court's records indicate that cause number 19290 is associated with charges that the 252nd District Court dismissed on October 27, 2014, and that cause number 302196-2 is associated with charges that Jefferson County Court at Law No. 2 dismissed on November 13, 2014.

[5] The Government's includes reference to cause numbers 18675 and 14-18676 in connection with this conviction. The court's records indicate that cause number 18675 is associated with a charge that the 252nd District Court dismissed on October 27, 2014. In cause Number 14-18676, Bendy was convicted of unlawful possession of a firearm by a felon in the 252nd District Court and sentenced to 5 years' imprisonment.

admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).

Extrinsic evidence under Rule 404(b) is admissible if: (1) it is relevant under Rule 401 to an issue other than the defendant's character, and (2) its probative value is not substantially outweighed by its prejudicial effect under Rule 403. *United States v. Lewis*, ___ F.4th___, No. 24-20235, 2025 WL 2963186, at *13 (5th Cir. Oct. 21, 2025) (quoting *United States v. Williams*, 620 F.3d 483, 488 (5th Cir. 2010)); *United States v. Stuart*, 132 F.4th 892, 900 (5th Cir. 2025) (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978)). The Government maintains the burden of demonstrating—in every case—that a prior conviction is relevant and admissible under 404(b). *United States v. Hemphill*, No. 23-50675, 2024 WL 5184299, at *5 (5th Cir. Dec. 20, 2024) ("The burden is on the government to demonstrate 'that a prior conviction is relevant and admissible under [Rule] 404(b).'" (quoting *United States v. Wallace*, 759 F.3d 486, 494 (5th Cir. 2014))), *cert. denied*, 145 S. Ct. 2855 (2025); *United States v. Valenzuela*, 57 F.4th 518, 521 (5th Cir. 2023).

As a threshold matter, the court must determine whether the extrinsic evidence is "sufficient to support a finding that the crime or act actually occurred." *United States v. Caballero*, No. 23-50091, 2024 WL 3175453, at *3 (5th Cir. June 25, 2024) (quoting *United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015)); *see United States v. Gonzalez*, No. 23-10999, 2025 WL 48071, at *5 (5th Cir. Jan. 8, 2025); *United States v. Gutierrez-Mendez*, 752 F.3d 418, 424 (5th Cir. 2014) ("The court . . . examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988))). Here, the Government avers that

it intends to call two witnesses to testify about Bendy's prior convictions and that it will offer certified copies of the relevant judgments. Thus, the court anticipates that the Government will offer sufficient evidence of the extrinsic acts to evaluate their admissibility under *Beechum*'s two-prong analysis.

With regard to the first prong, the Government states that Bendy's prior convictions are relevant to his "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." As to Bendy's 2018 federal conviction for being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g), the Government first contends that this conviction is admissible to help prove the identity of Bendy.[6] Specifically, the Government avers that during the pendency of the investigation in this case, Bendy announced via intercepted wire communications that he was on parole, had a "PO," or was otherwise under court-ordered supervision. The Government further explains that Bendy was serving his three-year term of supervised release for his 2018 federal conviction at the time of the intercepted communication. Accordingly, that fact, coupled with the interceptions, will be used as a part of the totality of the evidence to prove Bendy's identity. The court agrees that evidence that Bendy was on supervised release for the 2018 conviction when he made the statement about having a "PO" is relevant to establishing his identity. *See* FED. R. EVID. 401 (stating that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action").

---

[6] Although the Government states that it "does not abandon its argument that [the 2018 federal] conviction and related conduct is intrinsic evidence to the crimes charged," it fails to brief this argument to the court. Accordingly, at this time, the court will consider only the Government's contention that this conviction is admissible extrinsic evidence under Rule 404(b).

Additionally, the Government asserts that all five of the prior convictions demonstrate Bendy's intent to participate in the alleged conspiracy and to possess with the intent to distribute a controlled substance. Regarding the 2018 federal conviction, despite being a conviction for possession of a firearm by a prohibited person, the Government asserts that the relevant conduct surrounding the conviction is similar to the facts at bar. In particular, the Government relates that during that prosecution, Bendy acknowledged that narcotics were regularly exchanged for money at his residence; that he was known as "the pill man" and that he purchased $400 to $500 of pills on a daily basis to be resold; that he had purchased one kilogram worth of methamphetamine since January 2017 in order to resell it; and that during the execution of a search warrant at his residence, methamphetamine was found. As for the four remaining convictions, they all relate to possession or delivery of a controlled substance.

"The mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence." *United States v. Jimenez-Elvirez*, 862 F.3d 527, 536 (5th Cir. 2017) (quoting *United States v. Broussard*, 80 F. 3d 1025, 1040 (5th Cir. 1996); *see United States v. Robert*, No. 20-61084, 2021 WL 4484983, at *3 (5th Cir. Sept. 30, 2021) (citing *United States v. Booker*, 334 F.3d 406, 411 (5th Cir. 2003)); *United States v. Dow*, 789 F. App'x 473, 474 (5th Cir. 2020). "[W]here the prior offense involved the same intent required to prove the charged offense, that prior offense is relevant and [the court is] required only to consider whether the requirements of Rule 403 are met under *Beechum*'s second prong." *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009) (citing *Broussard*, 80 F.3d at 1040); *see United States v. Weaver*, No. 24-60252, 2025 WL 722683, at *3 (5th Cir. Mar. 6, 2025) (holding that in general, "the 'relevance' of evidence under *Beechum*'s

9

first step 'is a function of its similarity to the offense charged.'"), *cert. denied*, No. 24-7462, 2025 WL 2824032 (U.S. Oct. 6, 2025); *United States v. Hesson*, 746 F. App'x 324, 331 (5th Cir. 2018). The similarity of intent required between the extraneous act and the charged offense means only that the defendant must "indulg[e] himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *Beechum*, 582 F.2d at 911; *accord United States v. Ortega*, 619 F. App'x 389, 390 (5th Cir. 2015).

Bendy has entered a plea of not guilty as to Count One and Count Eight of the Indictment, thereby raising the issue of his intent. Consequently, extraneous acts may be admitted to show his criminal intent in this case. The five prior convictions all involve Bendy's possession and/or delivery of controlled substances. Accordingly, the court finds that they are relevant to the issue of whether Bendy had the requisite intent to commit the offenses charged—namely Conspiracy to Possess with the Intent to Distribute 50 Grams or More of "Actual" Methamphetamine, in violation of 21 U.S.C. § 846, and Possession with Intent to Distribute 50 Grams or More of "Actual" Methamphetamine, in violation of 21 U.S.C. § 841.

In evaluating the second prong, whether the probative value is substantially outweighed by undue prejudice, some of the factors the court must consider include: "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *Lewis*, 2025 WL 2963186, at *14 (quoting *Smith*, 804 F.3d at 736); *Stuart*, 132 F.4th at 900 (quoting *United States v. Meyer*, 63 F.4th 1024, 1040-41 (5th Cir. 2023)).

With respect to the first factor, the Government has a greater need for extrinsic evidence when there is a lack of other evidence that is highly probative of a key issue such as intent. *See,*

10

*e.g.*, *Valenzuela*, 57 F.4th at 523 (concluding that the government needed the extrinsic evidence to counter the defendant's testimony that she was an unwitting participant in the smuggling activity); *Caballero*, 2024 WL 3175453, at *4 (finding the Government demonstrated sufficient need for the extrinsic evidence to prove the defendant's knowledge of the ongoing conspiracy); *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017) (recognizing the Government's need for extrinsic evidence when a defendant places intent at issue by pleading not guilty and by denying knowledge of co-conspirator activity); *Smith*, 804 F.3d at 736 (finding first factor satisfied where intent was a significant and disputed issue at trial); *Beechum*, 562 F.2d at 914 ("[I]f the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily."). Here, the Government contends that its case is "subject to strong attack" because Bendy was not found to be in direct possession of controlled substances. Rather, the Government states that Bendy "routinely utilized couriers to carry out the distribution events which he supplied." Accordingly, the first factor favors the Government because Bendy's prior convictions are probative of his intent to further the objectives of the conspiracy as well as to possess with intent to distribute a controlled substance.

Second, the offenses are quite similar. "Similarity is relevant because the more similar the uncharged activity is to the charged offense, the more probative it is." *See United States v. Dillon*, 532 F.3d 379, 389 (5th Cir. 2008). Therefore, the second factor likewise favors the Government because the extrinsic acts entail similar conduct as that charged in the indictment. *See Juarez*, 866 F.3d at 628 ("[T]he probative value of the extrinsic offense correlates positively with its likeness to the offense charged." (quoting *Beechum*, 582 F.2d at 915)); *see also Jones*, 930 F.3d at 374 (finding that "minor factual differences between [the defendant's] past offense and

the conduct alleged [in the present case] do not render his past conviction non-probative");

*Broussard*, 80 F.3d at 1040 ("The fact that the offenses involved different narcotics does not

unfairly prejudice [the defendant] in light of the fact that both offenses involved conspiracy to

possess with the intent to distribute."); *United States v. Davis*, No. CR.A. 01-282, 2003 WL

1837708, at *3 (E.D. La. Apr. 8, 2003) ("Regardless of the drug involved, evidence of possession

of a substantial quantity of drugs . . . is relevant to show defendant's intent, knowledge, and

absence of mistake in conspiring to possess with intent to distribute drugs.").

With respect to the third factor, "[a]lthough the remoteness of the extrinsic acts evidence

may weaken its probative value, the age of the prior conviction does not bar its use under Rule

404." *Broussard*, 80 F.3d at 1040 (finding no prejudice from admission of prior conviction for

conspiring with intent to distribute marijuana that was more than ten years prior to the charged

offense for conspiring to possess cocaine with intent to distribute); *accord Weaver*, 2025 WL

722683, at *4 (upholding district court's admission of defendant's eleven-year-old and three-year-

old prior convictions); *see Jones*, 930 F.3d at 374 (holding that defendant's prior seven-year-old

conviction was not too remote in time to be probative); *United States v. Moore*, 433 F. App'x 308,

310 (5th Cir. 2011) (upholding the admission of defendant's prior conviction for possession of

methamphetamine that occurred sixteen years before the alleged beginning of the charged drug

conspiracy); *United States v. Charles*, 366 F. App'x 532, 537-38 (5th Cir. 2010) (affirming

district court's decision to admit 16-year-old conviction). "[R]emoteness may weaken a

conviction's probative value, but remoteness has never been held to be a per se bar to the

admission of a prior conviction." *Wallace*, 759 F.3d 486, at 494-95 (collecting cases).

Here, the extraneous offenses occurred before the alleged unlawful conduct in this case. The Indictment alleges that the conspiracy to possess with the intent to distribute "actual" methamphetamine spanned from December 2022 to November 2024, and that the offense of possession with intent to distribute and distribution of "actual" methamphetamine occurred on or about April 20, 2024. Bendy's most recent prior conviction that the Government seeks to introduce—the 2018 federal conviction—concerned conduct that took place on or about July 7, 2017. As to the 2018 federal conviction, Bendy fulfilled his term of imprisonment and commenced his term of supervised release on May 25, 2022, less than a year before the inception of the conspiracy charged in the case at bar. The court finds that the temporal relationship between the March 2018 conviction and the current charges does not diminish its probative value. Bendy's four state court convictions were for actions that took place in 2013 and 2014, and he was later paroled on April 8, 2016. While these convictions are somewhat dated, they nonetheless are admissible.

Finally, the risk of prejudice can be mitigated by the court's instructing the jury regarding the limited purposes for which other acts evidence can be considered. *See Caballero*, 2024 WL 3175453, at *5 ("A court's limiting instruction greatly minimizes the risk of undue prejudice."); *Gatson*, 2021 WL 2945026, at *1. Therefore, the Government has fulfilled the second prong of the *Beechum* test.

Moreover, the proffered extraneous offenses are not of a "heinous nature" that would "incite the jury to irrational decision by [their] force on human emotion" and are not "greater in magnitude" than the charge offense. *Caballero*, 2024 WL 3175453, at *5 (noting that even if all four factors of the second prong of the *Beechum* analysis weigh in favor of the Government, the

court must still consider all the circumstances surrounding the extrinsic offense); *Gatson*, 2021 WL 2945026, at *1; *Juarez*, 866 F.3d at 629-30 (5th Cir. 2017). There is also "little opportunity of creating unfair prejudice" under Rule 403, as the challenged evidence is relatively brief and will not "occupy a significant portion of the trial."[7] *United States v. Adair*, 436 F.3d 520, 527 (5th Cir. 2006); *accord Gatson*, 2021 WL 2945026, at *1.

Consistent with the foregoing authorities, Bendy's prior convictions are relevant to intent and issues other than his character, such as motive, plan, knowledge, identity, absence of mistake, or lack of accident in the instant case. In addition, the probative value of the proffered evidence is not substantially outweighed by the danger of unfair prejudice, confusion, or delay. *See Wallace*, 759 F.3d at 494 (finding "the probative value of evidence related to a defendant's prior drug-related activity is not substantially outweighed by unfair prejudice in a drug conspiracy case").

Accordingly, the evidence relating to Bendy's prior convictions is admissible under Rule 404(b) and *Beechum*, as long as an appropriate limiting instruction is given to the jury and the Government establishes the extraneous offense by a preponderance of the evidence. *See Dow*, 789 F. App'x at 474; *United States v. Berreles*, 783 F. App'x 453, 455 (5th Cir. 2019).

III.    Conclusion

Thus, the Government's Motion in Limine (#356) is granted in part and denied in part. As explained above, the court GRANTS the Government's request with respect to evidence and argument about:    pre-trial motions; plea offers and plea negotiations; punishment; jury

---

[7] The Government states that it intends to call two witnesses during its case-in-chief to testify about other-acts evidence and that the estimated time required for this presentation is no longer than two hours.

nullification; specific instances of Bendy's lawfulness or good conduct; Bendy's improper hearsay statements; and uncalled witnesses or evidence not presented. The court, however, DENIES the Government's request with respect to unspecified bad acts of Government witnesses. Finally, the court GRANTS the Government's request to admit the identified prior convictions under Rule 404(b), as long as an appropriate limiting instruction is given to the jury and the Government establishes the extraneous offenses by a preponderance of the evidence.

SIGNED at Beaumont, Texas, this 7th day of November, 2025.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE