|                           |   |                           |
|---------------------------|---|---------------------------|
| UNITED STATES DISTRICT COURT | | EASTERN DISTRICT OF TEXAS |

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| *versus* | § CASE NO. 1:24-CR-109(2) |
| | § |
| DARRELL JOSHUA BENDY | § |

## ORDER ADOPTING THE
## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the undersigned are two Motions to Suppress filed pro se by the Defendant, Darrell Bendy, and two Second Amended Motions to Suppress (#311, #313, #353, #363). The United States filed responses to the Defendant's motions (#339, #375). These motions were referred to United States Magistrate Judge Christine L. Stetson for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *United States v. Raddatz*, 447 U.S. 667, 681-84 (1980); *see also* 28 U.S.C. § 636(b)(1)(B); E.D. TEX. LOCAL R. CR-59(a). Judge Stetson heard testimony and oral argument on October 1, 2025, and October 31, 2025. Judge Stetson concluded that the Defendant lacked standing to contest the search on August 14, 2023, and that the search and seizure on April 20, 2024, was lawful. (#394.) Therefore, she recommended denying the Defendant's motions. (*Id*.)

The Defendant objected to Judge Stetson's findings, arguing that she misapplied the law regarding standing, failed to recognize the limits of third-party consent, overlooked the unlawful extension of the traffic stop, and improperly relied on the automobile exception. (#401.)

## STANDING

With regard to standing, the Defendant asserts that he has an expectation of privacy because the evidence seized is being used against him and he has target standing. He cites to an

Eighth Circuit case for support, which found standing for the homeowner as to the search of the luggage of two overnight guests because the luggage was located in his home and he had a legitimate expectation of privacy that any personal property brought into the house by his overnight guests would be free from government intrusion. *United States v. Perez*, 700 F.2d 1232, 1236 (8th Cir. 1983). This case is distinguishable from the search of Shelby Andrews's vehicle on August 14, 2023. As found by Judge Stetson, the Defendant here had no reasonable expectation of privacy in that vehicle. He did not own it, was not a passenger in the vehicle, and there is no evidence that he had any luggage or other items in the vehicle.

The Defendant also alleges that the doctrine of target standing is applicable. This doctrine refers to an argument sometimes raised in Fourth Amendment cases where a defendant claims standing to challenge a search or seizure solely because he was the "target" or intended focus of a government investigation. However, the Supreme Court has explicitly rejected target standing. In *Alderman v. United States*, and later in *Rakas v. Illinois*, the Court held that Fourth Amendment rights are personal and cannot be asserted vicariously. *Alderman*, 394 U.S. 165 (1969); *Rakas*, 439 U.S. 128 (1978). Thus, even if a search was directed at or intended to gather evidence against a specific person, that person lacks standing and cannot suppress that evidence unless his own reasonable expectation of privacy was infringed. *Alderman*, 394 U.S. 165 (1969); *Rakas*, 439 U.S. 128 (1978).

**CONSENT**

Next, the Defendant argues that the search of the vehicle on April 20, 2024, exceeded the scope of consent and lacked probable cause. He argues that Jonathan Austin's consent to search did not extend to a K-9 search. As discussed by Judge Stetson in her report, Austin did not speak

up to limit or withdraw his consent at any time during the entirety of the search of the vehicle. The Trooper told Austin that he called for a K-9 and asked him to keep the children away from the dog. Austin also saw the K-9 arrive to search the vehicle with the door and trunk still open. Given these circumstances, the court finds that Austin's consent extended to the K-9 search. *See United States v. Woods*, 445 F. Supp. 2d 1328, 1332–33 (M.D. Ala. 2006) (finding consent included the canine search of the interior of car where defendant was aware of dog's presence and purpose before the search and he did not limit the area the officers could search or ask that the search be discontinued).

In any event, probable cause also existed for the K-9 search. The Government introduced evidence of interceptions of wireless communications between the Defendant and other conspirators about an upcoming drug distribution event, and surveillance operations indicated that Austin would be traveling from Houston to Beaumont to supply another conspirator with methamphetamine from the Defendant. DPS Trooper Ricardo Cibrian was aware of this investigation and was asked to locate the black Camero Austin was reported to be driving. Once he did, he pulled Austin over for a defective left side tail lamp. Upon questioning Austin, Cibrian observed him to be shaky, nervous, and sweating profusely. After receiving consent to search the vehicle, Cibrian also found evidence of stripped screws and a trunk modification. These facts are more than enough to provide probable cause to perform a K-9 search of the interior of the vehicle.

Although not raised at the hearing or in his motions, the Defendant also argues that pursuant to *United States v. Matlock*, Austin lacked the common authority to consent to the search of all of the vehicle. 415 U.S. 164, 171 n.7 (1974). Matlock held that a third party who possesses "common authority" over premises or effects may validly consent to a search, and that

3

consent is effective against an absent, non-consenting co-occupant. *Id.* The Court noted that common authority does not depend on property rights, but rather on mutual use of the property by persons generally having joint access or control. *Id.* Applying these principles, the court finds that Austin had joint access or control of the vehicle. The Defendant does not dispute that Austin had permission to drive the vehicle. Courts have long held that the non-owner driver of a vehicle has the authority to consent to a search of that vehicle. *United States v. Crain*, 33 F.3d 480 (5th Cir. 1994) (citing *United States v. Varona-Algos*, 819 F.2d 81, 83 (5th Cir. 1987) (holding that the driver's consent to search vehicle was valid against passenger who later claimed to be vehicle's owner)); *see also Johnson v. United States*, 358 F.2d 139, 140 (5th Cir. 1966) ("The person in lawful possession of an automobile has authority to grant permission to search it.").

## PROLONGED STOP

The Defendant argues that the traffic stop of Austin was prolonged in violation of the Fourth Amendment because Cibrian had completed his checks and the time it took to wait for the K-9's arrival transformed the stop into an unconstitutional seizure. As noted by Judge Stetson, the Defendant did not present evidence of this issue at the hearing. He did, however, introduce the video of the traffic stop at the hearing and the Government briefed this issue in its response. The time from when the K-9 was requested and the time it arrived at the scene was only eight minutes, and the K-9 arrived within thirty-five minutes of the initial stop.

For a traffic stop, the "[a]uthority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). However, "additional investigation unrelated to the safe and responsible operation of the vehicle" is permissible only "if that investigation does not lengthen the driver's

4

detention or is supported by reasonable suspicion of additional criminal activity." *United States v. Reyes*, 963 F.3d 482, 487 (5th Cir. 2020). To assess reasonable suspicion, courts look to the totality of the circumstances. *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009).

Here, not only was there reasonable suspicion (in addition to consent and probable cause, as discussed above) to continue the stop due to the stripped screws on the paneling of the car and the trunk modification found by Cibrian, but there was also a concern regarding the safe operation of the vehicle. Cibrian testified that Austin did not have a driver's license to operate the vehicle and there were multiple children in the vehicle who did not have proper booster seats. During the stop, Cibrian was waiting for someone to arrive to pick up the children with the proper booster seats. Austin can be heard on the video of the stop calling someone and asking that person to go purchase booster seats to pick up the children.

Moreover, the court finds that the time elapsed was not unreasonable for this type of law enforcement activity. *See United States v. Pack*, 612 F.3d 341, 345-46 (5th Cir. 2010), *modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010) (recognizing that reasonable suspicion of criminal activity that developed after the initial stop justified a 35-minute stop).

## COLLECTIVE KNOWLEDGE

Finally, the Defendant asserts that the collective knowledge doctrine was misapplied because the Government did not produce evidence that the Trooper had this information at the time of the stop.

"Under the collective knowledge doctrine, it is not necessary for the arresting officer to know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary

5

facts." *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007). This information can be obtained through police channels, such as a radio dispatch. *United States v. Alvarez*, 40 F.4th 339, 351-52 (5th Cir. 2022); *see* 22 C.J.S. CRIMINAL PROCEDURE AND RIGHTS OF ACCUSED § 78 (stating that the information received must be through "official channels" in order for collective knowledge to form the basis upon which the police may establish reasonable suspicion or probable cause).

In *United States v. Garza*, the court found this doctrine applied where detectives instructed a police officer, who was aware of and involved in the drug trafficking investigation, to stop Garza for a traffic violation and continue to detain him for drug trafficking. 833 F. App'x 601, 602 (5th Cir. 2021). Applying the automobile exception, the court found probable cause existed, given the officer's knowledge of the controlled buy with the cooperating source, as well as the discovery of methamphetamine paraphernalia on Garza's person during a consensual search. *Id.*

Similar to Garza, Cibrian had collective knowledge of the investigation into Austin as the Defendant's courier in a drug trafficking investigation and the planned trip from Houston to Beaumont to transport methamphetamine. Moreover, collective knowledge aside, there was also probable cause to stop Austin for a traffic violation—defective left side tail lamp. After the stop, Austin's behavior and his consent allowed Cibrian to search the vehicle. Further, the trunk modification and stripped screws and scratches, as well as the K-9 alert, provided further independent evidence of probable cause to search the vehicle.

## CONCLUSION

The court conducted a de novo review of the objections in relation to the parties' filings and the applicable law. *See* FED. R. CRIM. P. 59; 28 U.S.C. § 636(b)(1). After careful

consideration, the court finds the objections have no merit and that Judge Stetson correctly concluded that the Defendant lacked standing as to the August 14, 2023, search and seizure, and that the April 20, 2024, search and seizure was lawful.

Accordingly, the Defendant's objections are OVERRULED. Judge Stetson's findings, conclusions and analysis are correct, and her report is ADOPTED. It is further ORDERED that the Defendant's motions to suppress (#311, #313, #353, #363) are DENIED.

**Signed this date**
**Nov 11, 2025**

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

Case 1:24-cr-00109-MAC-CLS  Document 406  Filed 11/11/25  Page 8 of 8 PageID #: 1828