| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

UNITED STATES OF AMERICA     §

    §

*versus*     §    CASE NO. 1:24-CR-109(2)

    §

DARRELL JOSHUA BENDY     §

### MEMORANDUM AND ORDER

Pending before the court is Defendant Darrell Joshua Bendy's ("Bendy") *pro se* Motion to Dismiss the Indictment (#446), wherein Bendy "moves to dismiss the indictment through false testimony, suppression of evidence, and violations of the defendant's constitutional rights." The Government filed a response in opposition (#464), which attached a copy of the transcript of the grand jury proceedings, and Bendy filed a reply (#486). In addition, Bendy filed a Motion for New Trial (#447). The Government filed a response in opposition (#463), and Bendy filed a reply (#487). Having considered the motions, the Government's responses, the submissions of the parties, the record, and the applicable law, the court is of the opinion that the motions should be denied.

I.     <u>Background</u>

On November 6, 2024, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a thirteen-count Indictment against Bendy and thirteen co-defendants. The Indictment charged Bendy in Count One with Conspiracy to Possess with the Intent to Distribute 50 Grams or More of "Actual" Methamphetamine, in violation of 21 U.S.C. § 846, and in Count Eight with Possession with Intent to Distribute 50 Grams or More of "Actual" Methamphetamine, in violation of 21 U.S.C. § 841. The case proceeded to a six-day jury trial, beginning on

November 12, 2025, and Bendy was ultimately found guilty by the jury of both Counts One and Eight. A sentencing hearing has yet to be set in this matter.

## II.    Vague and Conclusory Assertions

As an initial matter, the court notes that much, if not all, of the contents of Bendy's motions lack specificity and clarity as to the alleged errors he asserts. Although *pro se* motions are entitled to liberal construction, "*pro se* litigants are still required to provide sufficient facts in support of their claims." *Frazier v. Morris*, No. 2:11CV104-MPM-DAS, 2014 WL 4686723, at *4 n.17 (N.D. Miss. Sept. 18, 2014) (citing *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993)); *accord United States v. Ford*, No. CR 21-16-SDD-RLB, 2024 WL 4993385, at *3 (M.D. La. Dec. 5, 2024); *United States v. Obregon*, No. CR H-18-533-2, 2023 WL 4494353, at *1 (S.D. Tex. July 10, 2023). "Even under the rule of liberal construction, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'" *Frazier*, 2014 WL 4686723, at *4 n.17 (quoting *Pineda*, 988 F.2d at 23); *accord Ford*, 2024 WL 4993385, at *3; *Obregon*, 2023 WL 4494353, at *1. Thus, to the extent that Bendy fails to provide sufficient explanation of the alleged faults he seeks to address, his contentions are properly denied.

## III.    Motion to Dismiss the Indictment

Bendy "moves to dismiss the indictment through false testimony, suppression of evidence, and violations of the defendant's constitutional rights."

A.       False and Misleading Testimony

Bendy contends that the Government used false and misleading testimony to "obtain the indictment and probable cause affidavit."[1]  "The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process."  *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring).  A motion alleging a defect in instituting the prosecution, including an error in the grand jury proceeding or preliminary hearing, must be made before trial if the basis for the motion is then reasonably available.  FED. R. CRIM. P. 12(b)(3).  A court, however, may excuse a defendant's failure to file a timely motion for "good cause."  FED. R. CRIM. P. 12(e).  Bendy makes no attempt to show good cause as to why he did not file the pending motion to dismiss until February 2, 2026, nearly ten weeks after the jury returned its verdict.[2]  Nevertheless, even if Bendy could satisfy the good cause standard, his motion fails to show that dismissal of the Indictment is warranted.

"As a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant."  *United States v. Weaver*, No. 24-60252, 2025 WL 722683, at *2 (5th Cir. Mar. 6, 2025) (quoting *United States v. Cessa*, 861 F.3d 121, 141 (5th Cir. 2017)), *cert. denied*, 146 S. Ct. 163 (2025); *United States v. Whitfield*, 590 F.3d 325, 359 (5th Cir. 2009) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250,

---

[1] Although Bendy mentions "probable cause affidavit," his arguments and legal authority only address grand jury proceedings.  Accordingly, to the extent that Bendy also intends to challenge a "probable cause affidavit," he has provided insufficient explanation of his contention and it is denied.

[2] The court observes that Bendy has filed multiple motions to dismiss the Indictment, pre-trial and post-trial, all of which were denied.  *See* #s 309, 362, 397, 426.

254 (1988)).  "Dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations."  *Weaver*, 2025 WL 722683, at *2 (quoting *Cessa*, 861 F.3d at 141).

The United States Court of Appeals for the Fifth Circuit has "refuse[d] to adopt the proposition that, absent perjury or government misconduct, an indictment is flawed simply because it is based on testimony that may later prove to be questionable."  *Weaver*, 2025 WL 722683, at *2 (quoting *Cessa*, 861 F.3d at 142); *United States v. Shows Urquidi*, 71 F.4th 357, 366 (5th Cir. 2023).  "[W]hen a defendant claims that the prosecution put false information before the grand jury, [the court] ask[s] two questions:  (1) did the government 'knowingly []sponsor[]' false information before the grand jury and (2) was that information material, that is, was the information 'capable' of influencing the grand jury's decision."  *Shows Urquidi*, 71 F.4th at 366 (quoting *Cessa*, 861 F.3d at 142).

Bendy alleges that the Government knew that the following evidence presented to the grand jury was false:  "Agent lied about cash app, lied about defendants Bendy and Andrews[3] having jobs, lied about the defendant own[ing] a business, . . . [t]he agent falsely represented drug quantities that were never seized from defendant, . . . [l]ied about Lpr Hits and weekly trips before Aug. 14, 2023, . . . [and] lied about Andrews and Bendy selling drugs during Jan. 14, 2023."  Moreover, Bendy appears to contest the validity of the identification of his voice on the

---

[3] Shelby Andrews ("Andrews") is a co-defendant in this matter and was in a relationship with Bendy during the times relevant to this case.

intercepted calls in this case.  Bendy maintains that this false evidence precipitated the Indictment.

Each of these assertions, however, is insufficient to warrant dismissal of the Indictment.

### 1.    Cash App

With respect to Bendy's assertion regarding lies "about cash app," this vague reference

fails to articulate the nature of the purported false information or explain why it was material.

Without more information, the court is unable to evaluate what statements Bendy asserts are false

and whether those statements were material.

### 2.    Employment and Business Ownership

Bendy alleges that the agent lied "about defendants Bendy and Andrews having jobs," and

"about the defendant own[ing] a business."  The agent's testimony before the grand jury stated:

"We did searches of work history" for Bendy and Andrews, that produced no documentation that

they had a trucking business.  Additionally, the agent agreed that his search revealed no significant

employment history for Bendy or Andrews "or anything of note."

Bendy does not explain how these statements are either false or material.  Moreover,

during the trial, Special Agent Gianpaolo Marchese testified that his review of the Texas

Workforce Commission ("TWC") records produced no documentation of employment history for

Bendy.  Agent Marchese further testified that although Bendy claimed to have a trucking business,

no such business was reported to the TWC.  Further, Bendy had the opportunity to cross-examine

all of the Government's witnesses, including Agent Marchese, as well as to call his own witnesses.

Bendy did ask Agent Marchese several questions about whether the agent noticed that Bendy kept

an 18-wheeler on his property, which the agent answered in the negative.  Bendy did not offer any

evidence to contradict Agent Marchese's statements.  Thus, Bendy has failed to show that the

agent's statements to the grand jury regarding Bendy's employment history and business ownership were false or material. *See Hernandez v. United States*, No. 7:17-CR-1352-1, 2023 WL 11967352, at \*29 (S.D. Tex. Dec. 18, 2023) ("A petit jury's guilty verdict generally renders 'any error in the grand jury proceeding connected with the charging decision [] harmless beyond a reasonable doubt.'" (quoting *United States v. Mechanik*, 475 U.S. 66, 70 (1986))), *adopted by* No. 7:17-CR-1352-1, 2024 WL 4630650 (S.D. Tex. Feb. 7, 2024); *United States v. Aldridge*, No. CRIM.A. H-10-185(1), 2011 WL 1811074, at \*1 (S.D. Tex. May 10, 2011) ("In cases such as this that have already proceeded to trial, the Supreme Court and the Fifth Circuit have held that guilty verdicts by a petit jury at trial render grand jury errors harmless because petit juries must apply a higher standard of guilt to convict than grand juries must employ to indict."); *see also Wilkerson v. Whitley*, 28 F.3d 498, 503 (5th Cir. 1994) ("Moreover, prosecutorial misconduct in a grand jury proceeding may be deemed harmless if the petit jury convicts." (citing *Mechanik*, 475 U.S. at 72)).

### 3. Drug Quantities

Bendy claims that "[t]he agent falsely represented drug quantities that were never seized from defendant." Again, Bendy fails to articulate the drug quantities to which he is referring or how they are material to the grand jury's decision to indict. Bendy appears to be referring to drug quantities that were seized from co-defendants, but considering the scale of this conspiracy, the court cannot discern what events Bendy is challenging.

Moreover, the Government does not need to show that controlled substances were seized directly from Bendy to implicate him in the conspiracy. *See United States v. Martinez*, 131 F.4th 294, 309 (5th Cir. 2025) (holding that a defendant may be convicted of conspiracy "even if he

only played a minor role in the conspiracy" and "a defendant need not know all of the specific details of the conspiracy . . . and need not have ever physically touched any of the drugs involved in the conspiracy." (quoting *United States v. Daniels*, 723 F.3d 562, 575 (5th Cir.), *reh'g granted in part on other grounds*, 729 F.3d 496 (5th Cir. 2013))).

### 4. Drugs Sold from January to August 14, 2023

Bendy also avers that the agent "lied about Andrews and Bendy selling drugs during Jan — August 14, 2023." Bendy's objection is again unclear. During the grand jury proceedings, the agent detailed several events in chronological order that ultimately supported the Indictment in this case. The first event which highlighted Bendy's involvement in the conspiracy occurred on August 14, 2023. Count One of the Indictment, the conspiracy charge, spans from "in or about December, 2022," to November 6, 2024. Bendy has previously, without success, challenged the duration of the conspiracy charge as applied to him. *See, e.g.*, #362 (Motion to Dismiss), #381 (Report and Recommendation), and #405 (Order adopting). To the extent that Bendy is challenging the duration of the conspiracy as applied to him, a conspirator is liable for "all acts committed by [co-conspirators] in furtherance of the conspiracy, including those acts committed without his knowledge before he joined the conspiracy." *United States v. Rodriguez-Lopez*, 756 F.3d 422, 430 (5th Cir. 2014) (quoting *United States v. Marionneaux*, 514 F.2d 1244, 1250 (5th Cir.1975), *abrogated on other grounds by United States v. Lane*, 474 U.S. 438 (1986)); *United States v. Porter*, 542 F.3d 1088, 1093 (5th Cir. 2008) (holding that defendant "is responsible for overt acts completed before she joined the conspiracy" (quoting *United States v. Barksdale–Contreras,* 972 F.2d 111, 114 (5th Cir. 1992))); *United States v. Blackthorne*, 378 F.3d 449, 454 (5th Cir. 2004) ("[O]ne who joins an ongoing conspiracy is deemed to have adopted

the prior acts and declarations of conspirators, made after the formation and in furtherance of the conspiracy." (quoting *Barksdale–Contreras*, 972 F.2d at 114)); *United States v. Davis*, 666 F.2d 195, 200 (5th Cir. 1982) (stating that "the prior actions of coconspirators in furtherance of the conspiracy are attributable to one who later joins the conspiracy"); *United States v. Wilson*, 500 F.2d 715, 727 (5th Cir. 1974).

5.      LPR[4] Hits and Weekly Trips

Bendy further asserts that the agent "[l]ied about Lpr Hits and weekly trips before Aug. 14, 2023." Neither the Government nor the court were able to locate mention of "LPR hits" in the Grand Jury transcript. The agent did, however, state: "Intelligence shows the Andrews and the vehicle[5] would make weekly trips from Houston to Beaumont, primarily in the afternoon and late time evenings." Bendy makes no effort to show how this statement was false or material. Moreover, this information is consistent with testimony and evidence produced during the trial to establish that Bendy's co-defendant, Andrews, would make frequent trips between Houston and Beaumont in the gold Ford Fusion.

The court concludes that Bendy has failed to demonstrate the existence of any false and material statements made before the grand jury. Accordingly, dismissal of the indictment on these grounds is not warranted.

---

[4] Although never defined in his motion, the court assumes that by "LPR" Bendy is referring to License Plate Reader.

[5] Referring to the gold Ford Fusion registered to Bendy.

B.       Nature of Evidence

Bendy further contends that the grand jury proceedings were flawed because he "was identified with certainty, no voice exemplar was taken, no authentication was performed under Rule 901, that the conversations involved drug transactions." As the Government notes, however, it is well settled that the Federal Rules of Evidence, other than with respect to privileges, do not apply to grand jury proceedings. FED. R. EVID. 1101(d)(2); *accord United States v. Walker*, 410 F.3d 754, 758 (5th Cir. 2005) (observing that grand jury proceedings "are not bound by the same rules of evidence as judicial proceedings"); *Wilkerson*, 28 F.3d at 503 (stating that the grand jury is "not bound by evidentiary restrictions"). "The Supreme Court has said that grand juries may initiate investigations based on 'tips, rumors, evidence offered by the prosecutor, and their own personal knowledge.'" *United States v. McKenzie*, 678 F.2d 629, 632 (5th Cir. 1982) (quoting *United States v. Dionisio*, 410 U.S. at 1, 15 (1973))). Accordingly, the Government was not required to authenticate evidence under Federal Rule of Evidence 901 during the grand jury proceedings.

Further, to the extent Bendy asserts that the Government failed to establish that intercepted phone calls involved drug transactions, the grand jury merely needed to find probable cause to believe that a crime was committed. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 423, (1983). "The probable cause decision, by its nature, is hard to undermine, and still harder to reverse." *Kaley v. United States*, 571 U.S. 320, 339 (2014). Bendy offers no basis for challenging the grand jury's finding, especially after the petit jury returned a guilty verdict as to both Counts One and Eight, the only counts of the Indictment on which Bendy went to trial. *See Aldridge*, 2011 WL 1811074, at *1.

In addition, Bendy appears to challenge the nature of the Government's evidence of an event that occurred on August 14, 2023. Specifically, Bendy appears to take issue with the Government's presentation of photographs to the grand jury rather than showing the video recording of the event. Again, Bendy fails to establish that this evidence was "false" or that the photographic evidence was insufficient to establish probable cause. The Government further notes that the video recording of the August 14, 2023, event was presented at trial and the jury ultimately convicted Bendy of both Counts One and Eight, thus weakening any assertion that had the Government shown the video to the grand jury, it would not have issued the Indictment.

C.    Discovery Obligations

Under the subheading "Suppression of *Brady*, *Giglio*, and Jencks Material," Bendy contends that "the Government failed to produce LPR records, wire tap warrants, [and] minimization logs." He further asserts that the Government did not produce the "96 page warrant affidavit . . . until Day 3 of trial."

With respect to "LPR records," the Government explains that this data was not gathered as a documentary file during this investigation. Instead the data was used as a reactionary tool to enable law enforcement officers to anticipate the arrival of Bendy and his associates in Beaumont during the investigation. Accordingly, the Government had no LPR records to turn over.

Regarding the Title III wire intercept affidavits, as explained during the trial, Bendy was provided with notice of the affidavits, copies of the affidavits through counsel, and an opportunity to review the affidavits with the case agent after he elected to proceed *pro se*. Indeed, the Government attached several emails and letters to its response documenting its disclosure of the affidavit to Bendy's counsel while he was represented by court-appointed counsel, as well as

10

notification to Bendy's stand-by counsel that the affidavit was available for review after Bendy elected to proceed *pro se*. *See* #s 464-2, 464-3, 464-4, 464-5, and 464-6. Further, the Government provided the copies of the affidavits to Bendy during the trial proceeding. Bendy's continued objection on this ground is without basis.

Concerning "minimization logs," the Government states that it has complied with the court's order requiring it to furnish Bendy with "a copy of the court order and application authorizing wire, oral or electronic communication interceptions ten (10) days prior to trial." *See* #332. The court notes that although Bendy objected to the introduction of several intercepted phone calls during trial, he did not object on the basis that the intercepted calls were not properly minimized. *See, e.g.*, #416 (overruling Bendy's objections to intercepted phone calls). Bendy, however, did raise the general concept of minimization *after* the phone calls were admitted into evidence at trial, but even then he did not specify any particular instance where he questioned the adequacy of the Government's minimization efforts. Moreover, the Government has provided documentation that sensitive information, including the Title III application and order, would be made available for Bendy's review upon request. *See, e.g.*, #s 464-3, 464-4, 464-6. Accordingly, Bendy's complaint regarding disclosure of minimization logs at this stage is unfounded.

To the extent Bendy intends to allege that the Government committed any other discovery violation under *Brady*, *Giglio*, or the Jencks Act, he fails to identify any specific documents, statements, or other evidence that the Government withheld. Regarding *Brady* material, the Government avers that it "has identified no *Brady* material related to Defendant in its case file" and that "[a]ny allegation relating to a failure to provide such material is false and denied." *See also* #464-5. The Government further asserts that "[b]efore the testimony of the government's

11

witnesses at trial, Defendant was handed copies of all relevant reports and statements made by those individuals." Because Bendy fails to identify any *Brady*, *Giglio,* or Jencks material that he believes was withheld, his motion is denied.

III.     Motion for New Trial

Bendy's Motion for New Trial lists the following grounds that he believes justifies a new trial under Federal Rule of Criminal Procedure 33:  Discovery Violations; Jencks Act Violations; Government Misconduct; Wire Tap Authentication Failure; Minimization Failure; and Witness Impeachment Restrictions.

Rule 33 of the Federal Rules of Criminal Procedure permits the court to vacate a judgment and grant a new trial on a defendant's motion if it determines that "the interest of justice so requires."  FED. R. CRIM. P. 33(a).  The rule specifies, however, that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."  FED. R. CRIM. P. 33(b)(1).  The rule further states that "any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  FED. R. CRIM. P. 33(b)(2).  This deadline is generally viewed as an inflexible claim-processing rule that prevents the court from accepting a late-filed motion if the Government objects.  *See Eberhart v. United States*, 546 U.S. 12, 19 (2005); *United States v. Scott*, 70 F.4th 846, 859 (5th Cir. 2023).

No issues raised in Bendy's motion relate to newly discovered evidence, and the Government's response (#463) asserts that the court must deny Bendy's motion for failure to comply with the 14-day deadline in Rule 33.  The jury returned its verdict and finding of guilt on November 19, 2025.  Pursuant to Rule 33, Bendy should have filed his motion grounded on

reasons other than newly discovered evidence within fourteen days after the verdict or finding of guilty—on or before December 3, 2025. *United States v. Cobas*, 415 F. App'x 555, 556 (5th Cir. 2011) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."); *see also* FED. R. CRIM. P. 33(b)(2).

In his reply, Bendy opposes the Government's contention that his motion is untimely and states that "multiple timely filing attempts were obstructed by clerical failure and filing irregularities." Bendy contends that his family members and friends attempted to file motions on his behalf, but he does not provide documentation of the purported motions, an indication of the arguments allegedly raised therein, or evidence that these motions complied with the court's orders regarding his *pro se* filings in this case. *See, e.g.*, #347 (requiring that Bendy's filings with the court be signed by him prior to filing), #349 (cautioning Bendy that his filings with the court must be filed by mail or in person (not by facsimile) and must be signed by him prior to filing), #360 (stating that clerk's office will not accept any filings by facsimile or email from Bendy and cautioning Bendy that his continued refusal to sign his filings could result in them being returned to him as improper), #409 (refusing to accept for filing three motions Bendy presented to the court because they appeared to have been prepared by an individual (other than Bendy in his *pro se* capacity) who was not admitted to practice law in this court, and appeared to be generated with the assistance of artificial intelligence without proper review and verification, among other reasons). Accordingly, the court concludes that Bendy's motion is untimely.

Furthermore, even if Bendy had timely filed his motion for new trial, his accusations lack the particularity and specificity required to allow the Government to respond and the court to rule

on his motion.   First, under the heading "Discovery violations," Bendy states that "the Government failed to comply with Rule 16 and this court's discovery order."   There is no additional information provided.  This conclusory statement is insufficient to support a motion for new trial.

Next, under the subheading "Jencks Act Violations," Bendy contends "Required witness statements under 18 U.S.C. § 3500 were not produced."  The Government provided Bendy with copies of all relevant reports and statements made by its witnesses *before* they testified.  The Jencks Act provides that statements made by the Government's witnesses do not have to be disclosed "until said witness has testified on direct examination in the trial of the case."   18 U.S.C. § 3500(a).   Accordingly, the Government has complied with the requirements of the Jencks Act.

Bendy also contends that the "Government withheld evidence, misled the defense, and introduced undisclosed material at trial."   This vague and conclusory statement provides no context or specific issues for the court to address.

Under the subheading "Wire Tap Authentication Failures" Bendy asserts that the "Government failed to Authenticate recordings under FRE 901 and Failed to show proper sealing, chain of custody, and voice identification."  The Government, however, presented testimony from Penny Folloder, a Drug Enforcement Administration ("DEA") Telecommunications Specialist, Courtney Daniels, a representative of Verizon, Abel Jennings, a representative of AT&T, Ricardo Leal, a representative of T-Mobile, and Greg Cherundolo, with JSI Telecom, to authenticate the intercepted phone calls, and they were admitted by the court.  *See* #416 (supplementing the court's oral order admitting intercepted phone calls).  Bendy's conclusory statement fails to articulate how

14

the Government's authentication of the intercepted phone calls falls short of the requirements of Federal Rule of Evidence 901.

Bendy also states that the "Government violated 18 U.S.C. § 2518(5) by failing to minimize non-pertinent calls." Again, Bendy fails to indicate which phone calls he contends were not properly minimized, providing the court exactly zero context to evaluate his assertion.

Finally, Bendy avers that he was "improperly limited from [] impeaching government witness, violating the 6th Amendment." Again, no explanation is provided to allow the court to understand his claim. Without any additional information, Bendy's conclusory statement fails to support his motion for new trial.

In his reply, Bendy also adds claims for *"Brad*y violations," *"Franks* violation," and "Title III violations." With respect to an asserted *Brad*y violation, Bendy states that "Grand Jury testimony at page 28 lines 7-20 and page 29 line 1-3 was not disclosed prior to trial. This prevented Defendant from challenging probable cause and preparing a defense, violating Brady v. Maryland." The identified excerpt from the Grand Jury testimony discusses: (i) Cash App payments made by co-defendant Joseph Lynn Williams to Andrews and (ii) the agent's testimony that Bendy and Andrews did not have any significant employment history.

The Government violates *Brady* where it suppresses evidence that is (1) favorable to the accused, either because it was exculpatory or impeaching, and (2) material. *United States v. Cessa*, 861 F.3d 121, 128 (5th Cir. 2017). Here, Bendy fails to articulate how this testimony was either favorable or material in order to be considered *Brady* material. As stated above, the Government avers that it did not identify any *Brady* material related to Bendy in this matter. Moreover, the Government provided the grand jury transcripts to Bendy prior to Agent Marchese

15

testifying pursuant to the Jencks Act.  Information which falls under *Brady* or *Giglio* that is also subject to the Jencks Act need not be produced until after the government witness testifies unless the failure to produce the information in advance would prevent the defendant from effectively using it at trial.  *See United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018); *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) ("When evidence is disclosed at trial in time for it to be put to effective use, a new trial will not be granted "simply because it [the *Brady* evidence] was not disclosed as early as it might have and, indeed, should have been." (quoting *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir. 1985))); *United States v. Brown*, 699 F.2d 704, 709 (5th Cir. 1983) ("[W]hen alleged *Brady* material is contained in Jencks Act material, disclosure is generally timely if the government complies with the Jencks Act." (quoting *United States v. Anderson*, 574 F.2d 1347, 1352 (5th Cir. 1978))); *United States v. Harris*, 349 F.R.D. 614, 618 (E.D. La. 2025) (collecting cases).

As to Bendy's contentions of *Franks* violations and Title III violations, his contentions continue to lack specificity, and thus, the court will not hypothesize as to the alleged faults Bendy intends to raise.  Therefore, Bendy's motion for new trial provides no basis for relief.

IV.   Conclusion

Accordingly, Bendy has failed to show that either dismissal of the Indictment or that a new trial is warranted.  Bendy's *pro se* Motion to Dismiss the Indictment (#446) and Motion for New Trial Pursuant to Rule 33 (#447) are DENIED.

SIGNED at Beaumont, Texas, this 17th day of April, 2026.

_____

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE