**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:24-CR-109(2) |
| | § | |
| DARRELL JOSHUA BENDY | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Darrell Joshua Bendy's ("Bendy") *pro se* Motion for Issuance of Subpoena to LaSalle Correctional Center for Attorney Access Logs, Legal Visit Records, and Video Surveillance (#482).  The Government filed a response in opposition (#530). Having considered the motion, the Government's response, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.      Background

On November 6, 2024, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a thirteen-count Indictment against Bendy and thirteen co-defendants.  The Indictment charged Bendy in Count One with Conspiracy to Possess with the Intent to Distribute 50 Grams or More of "Actual" Methamphetamine, in violation of 21 U.S.C. § 846, and in Count Eight with Possession with Intent to Distribute 50 Grams or More of "Actual" Methamphetamine, in violation of 21 U.S.C. § 841.  On November 14, 2024, Bendy appeared before United States Magistrate Judge Zack Hawthorn for an Initial Appearance, and Judge Hawthorn appointed Thomas Kelley ("Kelley") to represent Bendy in this matter.  Bendy was detained pending trial and housed at the Jefferson County Downtown Jail ("LaSalle").

On June 23, 2025, Bendy filed a *pro se* motion (#212) requesting that the court withdraw Kelley and appoint new counsel to represent him in this case.  On July 15, 2025, United States

Magistrate Judge Christine Stetson granted the motion and appointed David Griffin ("Griffin") to represent Bendy (#216).  On August 20, 2025, Bendy filed a second *pro se* motion to withdraw counsel, this time requesting to proceed *pro se* (#268).  On August 27, 2025, Judge Stetson held a *Faretta* hearing, granted Bendy's request to proceed to *pro se*, and appointed Griffin, whose office is located in Spring, Texas, 104 miles from Beaumont, as standby counsel for Bendy (#288).

On August 28, 2026, Bendy filed an Emergency Motion for Continuance (#289).  On September 4, 2025, the undersigned held a pretrial conference.  During the conference, parties discussed Bendy's *pro se* status and his access to discovery in this case.  The undersigned appointed Langston Adams ("Adams") to replace Griffin as standby counsel for Bendy because he maintains his office closer to the courthouse and LaSalle and would thus be better situated to facilitate Bendy's review of the discovery materials.  The court also addressed Bendy's Motion to Continue (#289).  The court, the Government, and Bendy agreed to reset the trial to November 12, 2025, to allow Bendy additional time to prepare.  The court, the Government, and Bendy also discussed the Government's Motion to Modify the Protective Order (#290), which addressed necessary modifications to accommodate Bendy's *pro se* status.  The court granted the Government's motion, ordering that the discovery materials be delivered to Adams and allowing Bendy to review the same in the presence of Adams.  *See United States v. Black*, No. 24-40345, 2025 WL 1588831, at *3 (5th Cir. June 5, 2025) (finding the court's refusal to allow *pro se* defendant to keep discovery in the jail without the presence of stand-by counsel was not an unreasonable limitation on defendant's access to discovery).

On October 1, 2025, Judge Stetson held a hearing on Bendy's Motions to Suppress (#s 311, 313) (filed September 10, 2025), Motion to Compel Production of Search Warrant Affidavits,

Wiretap Materials, and Surveillance Reports (#312) (filed September 10, 2025), Emergency Motion to Modify Protective Order and to Compel Discovery (#335) (filed September 22, 2025), and Motion to Modify or Vacate Protective Order (#336) (filed September 22, 2025). During the hearing, the Government confirmed that it provided Adams with the discovery and Adams stated that he had begun reviewing the discovery materials with Bendy in accordance with the amended protective order. Specifically, Adams stated that he visited Bendy at LaSalle on September 25, 2025, and September 30, 2025. Judge Stetson denied Bendy's Emergency Motion to Modify Protective Order and to Compel Discovery (#335) and Motion to Modify or Vacate Protective Order (#336). *See* #343. Also during the hearing, Bendy requested more time to review discovery and assert additional arguments regarding the suppression of evidence. Judge Stetson granted his request and extended the deadline to file additional motions to suppress to October 9, 2025. *See* #344. Subsequently, Judge Stetson granted Bendy's motion to further extend the motion to suppress deadline, moving the deadline to October 23, 2025 (#s 348, 349).[1]

On October 31, 2025, Judge Stetson held a hearing on Bendy's *pro se* Motion for Continuance and Request to Substitute Attorney (#364), as well as his two additional motions to suppress (#s 353, 363).[2] During the hearing, the court heard from Bendy who asserted that he had not been allowed adequate time to review the discovery in this matter. Adams, however, stated that he spent many hours visiting Bendy at the jail so that Bendy could review the discovery.

---

[1] On October 27, 2025, after the extended deadline, Bendy filed two additional motions to suppress (#s 353, 363).

[2] On November 4, 2025, Judge Stetson entered a Report and Recommendation (#394), recommending that the court deny Bendy's motions to suppress (#s 311, 313, 353, 363). The court entered an order adopting the Report and Recommendation (#406).

Specifically, Adams advised that he had visited Bendy at LaSalle on September 25, 2025, September 30, 2025, October 8, 2025, October 23, 2025, October 28, 2025,[3] and October 30, 2025.  Judge Stetson denied the Motion to Substitute Attorney (#364).  The undersigned denied Bendy's request for a continuance of the trial setting (#395).

The case proceeded to a six-day jury trial, beginning on November 12, 2025, and Bendy was ultimately found guilty by the jury of both Counts One and Eight.  A sentencing hearing has yet to be set in this matter.

II.    Analysis

Bendy requests the court to issue a subpoena to LaSalle Correctional Center Records Custodian to produce the following records that are relevant to Bendy:

1.    Attorney visitation logs,
2.    Attorney legal call logs,
3.    Attorney video visit logs,
4.    Denial or cancellation records,
5.    Sign in sheets for legal visits,
6.    Surveillance video of Attorney visitation rooms, [and]
7.    Any records showing attorney access from November 2024 through trial.

Bendy states that these records are necessary to support his request for "a new trial and sanctions." Specifically, Bendy contends that "the Government proceeded to trial knowing defendant had not been able to:  review discovery, view wiretap records, meet with counsels/stand by counsel, prepare cross-examination."  Bendy further avers:  "if these logs show little or no attorney contact, it proves:  1. Constructive denial of counsel, 2. Structural constitutional error, 3. Automatic entitlement to relief."

---

[3] Adams indicated that Bendy refused to meet with him on October 28, 2025.

Federal Rule of Criminal Procedure 17(c) "governs the issuance of subpoenas duces tecum in federal criminal proceedings." *United States v. Nixon*, 418 U.S. 683, 697 (1974). Rule 17(c)(1) provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

FED. R. CRIM. P. 17(c)(1).

"A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." *Nixon*, 418 U.S. at 698. A Rule 17(c) subpoena "was not intended to provide a means of discovery for criminal cases." *Id*. at 698-99. Rather, "its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Id*. Although Rule 17 subpoenas are generally employed in advance of trial, there is conflicting authority as to their availability with respect to post-trial motions and sentencing. *Compare United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981) (allowing Rule 17(c) subpoena for post-trial purposes), *with United States v. Martin*, 141 F.3d 1152 (2d Cir. 1998) (holding that Rule 17(c) relates solely to pretrial matters). The court need not decide whether Rule 17(c) subpoenas are available for Bendy's post-verdict purpose of filing a motion for new trial because Bendy's request fails to meet the requirements to obtain a subpoena duce tecum.

In order to gain access to materials under Rule 17(c), the requesting party must show that: "(1) the subpoenaed document is relevant, (2) it is admissible, and (3) it has been requested with adequate specificity." *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992); *accord United*

*States v. Butler*, 429 F.3d 140, 149 (5th Cir. 2005); *United States v. Loe*, 248 F.3d 449, 466 (5th Cir. 2001).   In addition, the party must show:   "(1) that the information is evidentiary and relevant; (2) that it is not otherwise procurable in advance through the exercise of due diligence; (3) that the party seeking production cannot properly prepare for post-trial motions or sentencing without advance inspection; and (4) that the application is made in good faith and is not simply intended as a general 'fishing expedition.'"   *Winner*, 641 F.2d at 833; *see Nixon*, 418 U.S. at 699.

Bendy fails to show that the requested records were not otherwise procurable in advance through the exercise of due diligence.   Bendy requests documentation of the pre-trial meetings he had with his stand-by counsel in order to show that he had insufficient time to prepare for trial. Bendy offers no explanation for why he did not seek to obtain these records earlier.   Accordingly, Bendy's request is untimely.   Moreover, Bendy does not demonstrate that he cannot properly prepare his post-trial motion without the records.   Bendy has first-hand knowledge of the time he spent with Adams prior to trial, and thus, he can prepare a post-trial motion based on his recollection, without the requested logs.

Further, as discussed in the court's Memorandum and Order (#507) dated April 17, 2023, a motion for new trial must be filed within 14 days after the verdict unless it is based on newly discovered evidence.   *See* FED. R. CRIM. P. 33(b)(2).   The jury returned its verdict and finding of guilty on November 19, 2025.   The amount of time Bendy spent with Adams prior to trial does not constitute newly discovered evidence.   Thus, a motion for new trial based on such information, which Bendy had prior to trial, would be untimely.

III.    Conclusion

In accordance with the foregoing, Bendy's *pro se* Motion for Issuance of Subpoena to LaSalle Correctional Center for Attorney Access Logs, Legal Visit Records, and Video Surveillance (#482) is DENIED.

SIGNED at Beaumont, Texas, this 1st day of May, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE